# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | |
| PETER OYOLA CABEZA & | CASE NO. 13-03796(ESL) |
| GEIDA L. SEGARRA ALEMESTICA | |
| | CHAPTER 13 |
| DEBTORS | |

**DEBTORS' REPLY TO CHAPTER 13 TRUSTEE'S OBJECTION
TO CONFIRMATION OF PLAN DATED SEPTEMBER 4, 2013 (Docket no. 35)**

TO THE HONORABLE COURT:

COMES NOW, Debtors, through the undersigned attorney, who respectfully states and prays as follows:

## I. PROCEDURAL BACKGROUND

1. Debtors filed this petition for relief under Chapter 13 of the Bankruptcy Code on May 9, 2013. Together with the voluntary petition, debtors filed the required schedules and Statement of Financial Affairs.

2. After several procedural matters, Debtors filed an Amended Chapter 13 Plan dated September 4, 2013 ("Amended Plan"). (Docket No. 27) Considering that the Debtors in this case are both self-employed, the Amended Plan on file consisted of two documents being the first the Standard One Page Form commonly used in this Judicial District and a second attachment that detailed specific additional provisions applicable to complement the Plan.

3. On October 1, 2013, the Chapter 13 Trustee filed an unfavorable report on the confirmation of Debtors' proposed Amended Plan. (Docket No. 35)

4.   In its unfavorable report the Chapter 13 Trustee alleges that Debtors average monthly income is greater than that reflected in Official Form B-22C ("Form B-22C" or "Mean Test") inasmuch Debtors' (1) failed to include rent income and; (2) expenses are less than those included on the Form B-22C, resulting in a greater average monthly income and lower business expenses.

5.   Finally, the Trustee contends that due to the contested income and expenditures, Debtors Disposable Income equaled an amount of $58,926.00 (982.11 per month) and as such, Debtors weren't submitting all their disposable income to fund the plan and; (2) the same was insufficient to pay the general unsecured pool determined by the Mean Test.

6.   However, for the reasons below stated, Debtors affirm that the Trustee's allegations are unwarranted and that the Amended Plan is sufficiently funded to pay the unsecured pool and that the same provides all of Debtors' projected disposable income to general secured creditors.

## II.   CONTESTED MATTERS

7.   Whether Debtors have disclosed and included the right amount of current monthly income in their Form B-22C?

8.   Which is the correct amount of expenditures necessary for the continuation, preservation, and operations of the business that Debtors should deduct for the determination of their disposable income?

9.   Whether Debtors' Amended Plan dated September 4, 2013, is sufficient to pay the required unsecured pool as determined by the Mean Test in Form B-22C?

### III. DETERMINATION OF CURRENT MONTHLY INCOME

10. In its unfavorable report the Chapter 13 Trustee asserts that Debtors average monthly income is higher than that reported on the Mean Test. Refer to *Unfavorable Report* on Docket No. 35.

11. For purposes of this analysis, the income part of the formula will be analyzed separately from the business expenditures portion.

12. We understand that the Chapter 13 Trustee allegations are due to an analysis of a Profit and Loss Analysis prepared in cash basis and provided by Debtors in their Reply to Trustee Objection to Confirmation of the Plan dated May 10, 2013. (Docket No. 28) Profit and Loss Statement is also attached herein as **Exhibit 1**.

13. In relation to the income reflected in Debtors Mean Test, Debtors hereby affirm that it slightly differ from the average monthly income provided by the historic Profit and Loss Statement enclosed as **Exhibit 1**. However, although Debtor does not contest the average monthly income provided in the Profit and Loss Statement, the same is not greater than that included by Debtors in their Mean Test.

14. As to the income portion, on the *unfavorable report* the Trustee relates to Debtors income as follows:

| Income from Mr. Oyola Cabeza | $1,695.00 |
|---|---|
| Income for Ms. Segarra Almestica | $13,136.39 |

| Income from Rent | $1,900.00 |
|---|---|
| Total | $16,731.99 |

15. By information and believe these amounts are subtracted by averaging the income reflected in the Profit and Loss Statement enclosed as **Exhibit 1.**

16. However in their Mean Test, Debtors detailed the following amounts of income:

| **Income from Mr. Oyola Cabeza** | **$1,800.00** |
|---|---|
| Income for Ms. Segarra Almestica | $13,079.00 |
| Income from Rent | $1,900.00 |
| **Total** | **$16,799.00** |

17. As can be easily observed, the amounts included in Debtors' Mean Test are greater than those determined by an average of the income for the prior 6 months prior the filing of the above captioned bankruptcy case.

18. Debtors state that any discrepancy between the information provided and the historic Financial Statements, are due to the fact than an analysis of Debtors financial information was ongoing at the time filing the voluntary petition. As such, Debtors further amended their Schedule I & J when analysis of the financial information was

completed reflecting the same amount of income asserted by the Trustee. (Docket Nos. 24 & 25)

19. Finally the Chapter 13 Trustee asserts that Debtors failed to include the rent income in their Mean Test.

20. However as can be confirmed, Debtors Mean Test as filed on May 13, 2013, includes and discloses in Part I, number 4, column B an amount of $1,900.00 for rent income. (Docket No. 9)

21. For the reasons above stated, Debtors asserts that even though the average monthly income per Mean Test slightly differ from the average monthly income from historic Financial Statement, the amounts of income referred to by the Trustee are lower than those included in the Mean Test.

### IV. DETERMINATION ALLOWABLE AMOUNT OF REASONABLE NECESSARY EXPENDITURES FOR BUSINESS

22. In its unfavorable report the Chapter 13 Trustee asserts that Debtors average monthly income is higher than that reported on the Mean Test.

23. Specifically, the Chapter 13 Trustee alleges that Debtors business expenses are significantly lower than the **$6,938.37** reflected on Form B-22C.

24. According to the Trustee, Debtors allowable business expenses are in the amount of $5,948.58 (Mr. Oyola = $381.71 and Mrs. Ms. Segarra Almestica = $5,566.83).

25. We understand that the Chapter 13 Trustee allegations, arise from averaging the historic Profit and Loss Statement provided by Debtors in their Reply to Trustee

Objection to Confirmation of the Plan dated May 10, 2013. (Docket No. 28) Profit and Loss Statement is also attached herein as **Exhibit 1**.

26. Debtors agree in the fact that the expenses budgeted and disclosed in the Form B-22C differ slightly from those calculated by the Chapter 13 Trustee pursuant Debtors' historic Profit and Loss Statement.

27. However Debtors assert that, from an evaluation of their business, the amounts included in Form B-22C are the actual business expenditures to be incurred during the Plan commitment period. Debtors state as follows.

28. Section 1325(b)(2) defines the term "disposable income" as "current monthly income received less amounts reasonably necessary to be expended. Among them, the Bankruptcy Code includes the expenditures necessary for the continuation, preservation and, operation of business, for debtors engaged in business. 11 U.S.C. § 1325(b)(2)(B)

29. However, for Debtors with a current monthly income greater than the highest median family income of the applicable State, as Debtors in this case, the reasonably necessary expenditures to be subtracted from the current monthly income shall be determined in accordance with subparagraphs (A) and (B) of section 707 (b)(2). 11 U.S.C. § 1325 (b)(3).

30. The formula for above-median-income debtors is known as the 'means test' and is reflected in schedule (Form 22C) that a Chapter 13 debtor must file." Hamilton v. Lanning, 560 U.S. 505 (2010)

31. Section 707(b)(2)(A)(ii)(I) provides in its pertinent part that, "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified

under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides." 11 U.S.C. § 707(b)(2)(A)(ii)(I). <u>In re Miranda</u>, 449 B.R. 182 (2011) citing <u>Hamilton v. Lanning</u>.

32. It has been amply discussed by case law that above median income debtors reasonable expenditures are governed by the dispositions Section 707 (b)(2). However, even the fixed expenditures established by Section 707 (b)(2) may be adjusted by a showing of special circumstances. In re Wilson, 397 B.R. 299 (2008)

33. Notwithstanding the aforementioned, within the contents subparagraphs (A) and (B) of section 707 (b)(2), there is no statutory fixed amounts for the allowable expenditures necessary for the continuation, preservation and, operation of business, for debtors engaged in business.

34. Further, is Debtors contention that although Congress pursued a standardization of allowable reasonable expenditures through Section 707 (b)(2) for above median debtors, fixing the allowable reasonable business expenditures allowed by Section 707 (b)(2)(B) was not there intent. Such a task may be impractical considering the ample variety of businesses and the specific nature of their required expenses to operate.

35. However, Debtors agree that the allowable expenditures for the continuation, preservation and, operation of business, have to be necessary and reasonable as required by Section 1325 (b)(2)(B) and are subject to the Court's scrutiny.

36. Furthermore, even not being regulated by Section 707 (b)(2), the allowable necessary and reasonable business expenditures must be for amounts that are certain and

known to be incurred at the time of the plan confirmation. This is consistent with this Court's forward looking approach for determining debtor's projected disposable income. In re Padilla, 2009 WL 2898837; In re Miranda, 449 B.R. 182 (2011).

37. Debtors agree with this Court's view in that "[p]rojected disposable income is a forward looking concept based on reality and not controlled by Form B22C". In re Padilla, 2009 WL 2898837.

38. In the above captioned case, Debtors filed their required Schedule J based on a detailed budget of necessary and reasonable expenses that would be incurred during the Plan commitment period. Docket No. 4) Even though Debtors further Amended their Schedule J, the amounts reflected in such budget was not altered. (Docket No. 25)

39. Debtors attached to their Amended Schedule J a detail of the expenses that would be incurred during the Plan for the preservation and operation of their business which are enclosed herein as **Exhibit 2**.

40. Debtors agree with the Chapter 13 Trustee in that the business expenditures included in Form B-22C differ from the mechanical calculation pursuant the historic Profit and Loss Statement for the six (6) months prior filing the bankruptcy case. (Form B-22C & Schedule J = $6,938.37; Average Financial Statement = $5,948.58)

41. However, any discrepancy is due to several factors. First, as per the historic financial statements, Debtors' payment behavior didn't reflect a standard pattern inasmuch there were necessary expenditures which weren't periodically made; second, improper segregation of personal and business expenditures provided for several business expenditures to be included in Debtors personal credit cards lowering the real expense

average, and third, in their historic cash flow statement there were no actual expenditures for self- employment taxes and municipal taxes. There should be no doubts that post petition taxes need to be paid during the reorganization period.

42. Debtors assert that the lack of business and operational structure is part of the reasons that lead to the filing of the above captioned case. Now, from a practical perspective, there are several expenditures which Debtors must include in their expenditures budget in order to responsibly reorganize their finances and comply with the provisions Bankruptcy Code and the Amended Plan.

43. As can be ascertain from evaluating Debtors budget included herein as **Exhibit 2**, Debtors also include expenditures for self employment and municipal taxes, which alone, represent an increase in actual expenditures to be incurred in the amount $361.25 (Self employment = 337.92; plus Municipal Taxes = $23.33)

44. On the other hand, actual expenditures included in the Monthly Operating Reports filed by Debtors since the commencement of their bankruptcy case, serve as support that the budgeted expenditures are reasonable and will be actually disbursed during the commitment plan period. Monthly Operating Reports submitted to the Chapter 13 Trustee for the months of June, July and August are enclosed herein as **Exhibits 3**, **Exhibit 4** & **Exhibit 5**, respectively.

45. An average of the business expenditures included the MORs for the months June, July and August 2013, (the only MOR which report operations for a full month), reflects an average of $6,343 in business expenditures.

| MOR | BUSINESS EXPENDITURES |
|---|---|
| June | $6,427 |
| July | $5,303 |
| August | $7,300 |
| **AVERAGE** | **$6,343** |

46. This without taking into consideration the amounts to be disbursed for self employment and municipal taxes, which have not reflected in their MORs due to the cash basis accounting method. However, such expenses will be certainly disbursed.

47. The average actual business expenditures in conjunction with the projected self employment and municipal taxes aggregate actual business expenditures in the amount of $6,680.92 which slightly differs from the Debtors' budgeted amount in Form B-22C ($6,938.37). However, it has to be taken into account that Debtors are both self employed and income as well as expenditures may differ from period to period. As such, Debtors assert that their projected business expenditures constitute allowable and reasonable amounts that are actually to be incurred during the commitment period.

48. The Chapter 13 Trustee limits its disapproval of the Amended Plan on the discrepancies arising on the mechanical calculation of the Means Test. A detailed operational budget is attached to Schedule J, and no objection is made neither concerning the unreasonableness of any of the expenditures nor whether they will be expended or not.

49. Ultimately, when a chapter 13 plan proposes to preserve a debtor's business, the real test is feasibility under section 1325(a)(6). The business must have some prospect of becoming profitable. However, assuming that test is met, then the court's task is limited to determining whether expenditures are necessary for the continuation, preservation, and operation of the business. And in that regard, considerable discretion must be given to the debtor, who will usually know the business far better than the court or the trustee. *Collier on Bankruptcy* ¶ 1325.11 (4)(c)(ii) (16th ed. 2013)

50. As above stated, Debtors evaluated their operating requirements and included as necessary and reasonable business expenditures an amount of **$6,938.37**. This was performed using as starting Debtors historic Profit and Loss Statement and its reasonableness is further supported by actual expenditures reflected in the MOR.

51. Debtors assert that, upon their experience, these amounts are reasonable and necessary for the continuation, preservation and, operation of business.

52. The Chapter 13 Trustee has not contested any particular budget expense as unreasonable or as impermissible.

53. For the above stated Debtors respectfully request for this Honorable Court to endorse the reasonability and necessity of the business expenditures included and deducted for estimating debtors' income in this reorganization proceeding.

## V.   SUFFICIENCY FOR PAYMENT OF GENERAL UNSECURED POOL

54.   In its unfavorable report the Chapter 13 Trustee asserts that Debtors Plan is insufficient to pay for the projected disposable income, and as such, the general unsecured pool.

55.   Debtors purport that said contention is contingent to this Court's resolution of the before discussed controversies concerning the allowed income and business expenditures.

56.   Pursuant to 11 U.S.C. § 1125 (b)(1)(B), upon the objection of the Chapter 13 Trustee objection, the Court in this case can only approve the Amended Plan if, *"as of the effective date of the plan, the same provides that all of the Debtors' projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payment to unsecured creditors under the plan"*.

57.   As per Debtors Mean Test the disposable income is in the amount of **$10,141.80** ($169.03 per month). (Docket No. 9)

58.   On the other hand, pursuant Debtors' Amended Plan dated September 4, 2013; Debtors propose a plan base in the amount of $73,600. Subtracting an estimate of $5,594.00 in Administrative expenses, $3,289 in arrears of secured claims and $32,350 in priority unsecured claims, the general unsecured creditors will receive during the commitment period an estimated payment in the amount of **$32,367.00**, which will be distributed in pro-rata among the allowed general unsecured claims.

59.   As such, pursuant their Amended Plan, Debtors are providing all of their projected disposable income for the payment of the general unsecured pool.

60.     Through their proposed plan base ($73,600), Debtors are not only providing for the required disposable income of **$10,141.80** ($169.03 per month), but also are allocating to the general unsecured all excess provided by their Amended Plan **$32,367.00**.

61.     As of this date, Debtors Amended Plan provides an initial monthly payment of $800.77 for a period of 24 months which is increased during the commitment period of the Plan.

62.     As can be ascertained through a review of Debtors' MOR, Debtors have duly complied with the proposed monthly payment included within their Amended Plan.

63.     Also it can be observed that on their August 2013 MOR, Debtors disposable income available for the next month is in the amount $608.00.

64.     As such, is Debtors contention that, as of this date, Debtors are paying all that they can paid as evidenced by their MORs and their Amended Schedules I & J. (Dockets No. 24 & 25)

65.     Is Debtors contention that they have being complying with the proposed monthly payment which represent all that they really can afford at the time.  For the above stated, Debtors respectfully request that this Court Orders confirming the Amended Plan dated September 4, 2013, over the Trustee's objection, inasmuch it provides all of Debtors' projected disposable income for the payment of the general unsecured claims in compliance with 11 U.S.C. § 1325 (b)(1)(B).

Peter Oyola Cabeza &
Geida L. Segarra-Almestica
Case No. 13-03796 ESL
Debtors' Reply To Chapter 13 Trustee' Objection
To Confirmation of Plan dated on September 4, 2013 (Docket No. 35)

**WHEREFORE**, and for the reasons stated above, Debtors respectfully pray for the Honorable Court, upon notice to parties in interest, for an Order confirming the Amended Chapter 13 Plan dated September 4, 2013.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY:** That on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to: **Francisco J. Cardona Esq**. for Banco Santander de PR at cardonaesq@gmail.com; **Migdalia Effie Guasp Esq**. for Banco Popular de PR at megbky@bppr.com; **Rosamar García Fontan Esq**. for Doral Bank at rgarcia@fgrlaw.com; **Francisco J. Portuondo-Díaz Esq**. for Oriental Bank at carmine.rodriguez@bbvapr.com; **Luis Y. Rodriguez San Miguel Esq**. for VAPR Federal Credit Union at lcdorodriguezsanmiguel@gmail.com; **Eduardo M. Veray Esq**. for Banco Popular de PR at everay@bppr.com; **José Ramón Carrión-Morales Esq**. Chapter 13 Trustee at newecfmail@ch13-pr.com; Alexandra Rodríquez, Esq. for José Ramón Carrión Morales at newecfmail@ch13-pr.com; and to the participants appearing in said record.

**I FURTHER CERTIFY:** That on this same date I mailed by United States Postal Service First Class Mail copy of this Motion but without the Exhibits, to the non CM/ECF participants appearing in the enclosed master address list.

**RESPECTFULLY SUBMITTED**

In Guaynabo, PR, this 21st day of October of 2013.

        **/S/Wigberto Lugo Mender**
        **WIGBERTO LUGO MENDER**
        **ATTORNEY FOR DEBTORS**
        USDC-PR 212304
        Centro Internacional de Mercadeo
        Carr 165, Torre I, Suite 501
        Guaynabo, PR 00968
        Tel. (787)707-0404
        Fax (787)707-0412
        e-mail: wlugo@lugomender.com

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0104-3<br>Case 13-03796-ESL13<br>District of Puerto Rico<br>Old San Juan<br>Mon Oct 21 18:06:25 AST 2013 | Antio, LLC<br>C O WEINSTEIN AND RILEY, PS<br>2001 Western Avenue, Ste 400<br>Seattle, WA 98121-3132 | BANCO SANTANDER OF PUERTO RICO<br>CARDONA JIMENEZ LAW OFFICE, PSC<br>PO BOX 9023593<br>SAN JUAN, PR 00902-3593 |
| DORAL BANK<br>FIDDLER GONZALEZ & RODRIGUEZ PSC<br>PO BOX 363507<br>SAN JUAN, PR 00936-3507 | ORIENTAL BANK<br>PO BOX 364745<br>SAN JUAN, PR 00936-4745 | VAPR FEDERAL CREDIT UNION<br>LUIS YAMIL RODRIGUEZ ESQ<br>PMB 256<br>PO BOX 4952<br>CAGUAS, PR 00726-4952 |
| US Bankruptcy Court District of P.R.<br>Jose V Toledo Fed Bldg & US Courthouse<br>300 Recinto Sur Street, Room 109<br>San Juan, PR 00901-1964 | AMERICAN EXPRESS<br>PO BOX 1270<br>NEWARK NJ 07101-1270 | American Express TRS Co Inc Latin American<br>Division<br>c/o Becket and Lee LLP<br>POB 3001<br>Malvern  PA 19355-0701 |
| Antio, LLC<br>c/o Weinstein & Riley, P.S.<br>2001 Western Ave., Ste.400<br>Seattle, WA 98121-3132 | BANCO POPULAR DE PUERTO RICO<br>BANKRUPTCY DEPARTMENT<br>PO BOX 366818<br>SAN JUAN PR 00936-6818 | BANCO POPULAR DE PUERTO RICO-REAL ESTATE DIV<br>PO BOX 362708<br>SAN JUAN PR 00936-2708 |
| BANCO SANTANDER<br>PO BOX 362589<br>SAN JUAN PR 00936-2589 | BANK OF AMERICA<br>PO BOX 15019<br>WILMINGTON DE 19850-5019 | BBVA ahora Oriental Bank<br>PO BOX 195115<br>SAN JUAN PR 00919-5115 |
| BPPR<br>PO BOX 362708<br>SAN JUAN PR 00936-2708 | BRANDSMART<br>PO BOX 960061<br>ORLANDO FL 32896-0061 | CASA SERVICES  ACCOUNTING CORP<br>CONDOMINIO PLAYA SERENA<br>CARRETERA 187<br>ISLA VERDE PR 00979 |
| CFSE<br>PO BOX 365028<br>SAN JUAN PR 00936-5028 | CHASE -BP<br>PO BOX 94014<br>PALATINE IL 60094-4014 | CITIBUSINESS CARD<br>PO BOX 183113<br>COLUMBUS OH 43218-3113 |
| CREDITOR FINANCIAL GROUP LLC<br>PO BOX 440290<br>AURORA CO 80044-1500 | CRIM<br>PO BOX 195387<br>SAN JUAN PR 00919-5387 | DEPARTMENT OF TREASURY<br>BANKRUPTCY SECTION 1504<br>235 AVE ARTERIAL HOSTOS<br>SAN JUAN PR 00918-1451 |
| DEPT DEL TRABAJO  REC HUMANOS<br>NEGOCIADO DE SEGURIDAD DE EMPLEO<br>505 AVENIDA MUNOZ RIVERA<br>SAN JUAN PR 00918-3352 | DORAL BANK<br>PO BOX 71529<br>SAN JUAN PR 00936-8629 | Department Stores National Bank/Macys<br>Bankruptcy Processing<br>Po Box 8053<br>Mason, OH 45040-8053 |
| Doral Bank<br>C/O Rosamar Garcia Fontan, Esq.<br>FIDDLER GONZALEZ & RODRIGUEZ, PSC<br>Counsel for Doral Bank<br>PO Box 363507<br>San Juan, Puerto Rico 00936-3507 | FIRST BANK<br>BANKRUPTCY DIVISION<br>PO BOX 9146<br>SAN JUAN, PR. 00908-0146 | FIRSTBANK<br>PO BOX 9146<br>SAN JUAN PR 00908-0146 |

| | | |
|---|---|---|
| GE Capital Retail Bank<br>Attn: Bankruptcy Department<br>PO Box 960061<br>Orlando FL 32896-0661 | GE Capital Retail Bank<br>c/o Recovery Management Systems Corp<br>25 SE 2nd Ave Suite 1120<br>Miami FL 33131-1605 | HOME DEPOT CREDIT SERVICES<br>PO BOX 182676<br>COLUMBUS OH 43218-2676 |
| INTERNAL REVENUE SERVICES<br>PO BOX 7346<br>PHILADELPHIA PA 19101-7346 | JC PENNEY<br>PO BOX 960090<br>ORLANDO FL 32896-0090 | JOSE M SUAREZ-GONZALEZ<br>EDF SAN JORGE 253<br>SUITE 3A<br>SANTURCE PR 00912-3307 |
| JUVAL X RODRIGUEZ-GARRIGA<br>MELIZA RIVERA ALVARADO<br>PO BOX 194527<br>SAN JUAN PR 00919-4527 | LCDO OSCAR AMADOR RAMIREZ CSP<br>ATTORNEY FOR BPPR<br>PO BOX 363422<br>SAN JUAN PR 00936-3422 | LEADING EDGE RECOVERY SOLUTIONS<br>5440 N CUMBERLAND AVE STE 300<br>CHICAGO IL 60656-1486 |
| MACYS<br>PO BOX 183083<br>COLUMBUS OH 43218-3083 | MARRIOTT-CHASE<br>PO BOX 94014<br>PALATINE IL 60094-4014 | MINI WAREHOUSE<br>CARR 190 ESQ AVE CAMPO RICO<br>CAROLINA PR 00984 |
| NORTHSTAR LOCATION SERVICES LLC<br>FINANCIAL DEPARTMENT<br>4285 GENESEE ST<br>CHEEKTOWAGA NY 14225-1943 | ORIENTAL BANK<br>BOX 364745,<br>SAN JUAN, PUERTO RICO 00936-4745 | PONTE INC<br>PO BOX 190032<br>SAN JUAN PR 00919-0032 |
| (p)PORTFOLIO RECOVERY ASSOCIATES LLC<br>PO BOX 41067<br>NORFOLK VA 23541-1067 | SEARS<br>PO BOX 183081<br>COLUMBUS OH 43218-3081 | State Insurance Fund Corporation<br>PO Box 365028<br>San Juan, Puerto Rico  00936-5028 |
| TCPR - Toyota Credit de Puerto Rico<br>P.O. Box 366251<br>San Juan, Puerto Rico 00936-6251 | TOYOTA MOTOR CREDIT<br>PO Box 195467<br>San Juan PR 00919-5467 | (p)US BANK<br>PO BOX 5229<br>CINCINNATI OH 45201-5229 |
| VAPR  FEDERAL CREDIT UNION<br>C/O  LUIS YAMIL RODRIGUEZ,ESQ.<br>PMB  256  PO  BOX  4952<br>CAGUAS  PR 00726-4952 | VAPR FEDERAL CREDIT UNION<br>PO BOX 33017<br>SAN JUAN PR 00933-3017 | GEIDA L SEGARRA ALMESTICA<br>PO BOX 79391<br>CAROLINA, PR 00984-9391 |
| JOSE RAMON CARRION MORALES<br>PO BOX 9023884<br>SAN JUAN, PR 00902-3884 | MONSITA LECAROZ ARRIBAS<br>OFFICE OF THE US TRUSTEE (UST)<br>OCHOA BUILDING<br>500 TANCA STREET  SUITE 301<br>SAN JUAN, PR 00901 | PETER OYOLA CABEZA<br>PO BOX 79391<br>CAROLINA, PR 00984-9391 |
| WIGBERTO LUGO MENDER<br>LUGO MENDER & CO<br>CENTRO  INTERNACIONAL DE MERCADEO<br>CARR 165 TORRE 1 SUITE 501<br>GUAYNABO, PR 00968 | | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Portfolio Recovery Associates, LLC
POB 12914
Norfolk VA 23541

US BANK
PO BOX 790408
ST LOUIS MO 63179-0408

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Banco Popular PR - Special Loans

(d)BANCO SANTANDER OF PUERTO RICO
CARDONA JIMENEZ LAW OFFICE, PSC
PO BOX 9023593
SAN JUAN, PR 00902-3593

(u)Banco Popular de Puerto Rico  Special Loan
Migdalia Effie Guasp, Esq.
Special Loans Department (733)
P.O. Box 362708, San Juan, P.R. 00936-27

End of Label Matrix
Mailable recipients    57
Bypassed recipients     3
Total                  60